IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ORANGEBURG DIVISION

| | |
|---|---|
| TERESA JANE HAGAN, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>NANCY A. BERRYHILL, *Acting* )<br>*Commissioner of Social Security*, )<br>)<br>Defendant. )<br>) | No. 5:15-cv-02194-DCN<br><br>**ORDER** |

This matter is before the court on United States Magistrate Judge Kaymani D. West's Report and Recommendation ("R&R") that this court affirm Acting Commissioner of Social Security Nancy A. Berryhill's (the "Commissioner") decision denying plaintiff Theresa Jane Hagan's ("Hagan") application for disability insurance benefits ("DIB"). Plaintiff filed objections to the R&R. For the reasons set forth below, the court adopts the R&R and affirms the Commissioner's decision.

## I.  BACKGROUND

### A.  Procedural History

Hagan filed an application for DIB on July 3, 2010, alleging disability beginning on December 1, 2007 (the "alleged onset date"). Tr. 118. The Social Security Administration denied Hagan's claim initially and on reconsideration. Tr. 64, 69. Hagan requested a hearing before an administrative law judge ("ALJ"), and ALJ Edward T. Morriss held a hearing on December 8, 2011, during which Hagan amended her alleged onset date to June 1, 2010. Tr. 26–57. The ALJ issued a decision on March 19, 2012, finding Hagan was not disabled under the Social Security Act. Tr. 10–21. Hagan requested Appeals Council review of the ALJ's

1

decision. The Appeals Council declined to review the decision, rendering the ALJ's decision the final action of the Commissioner. Tr. 1–6.

On April 23, 2013, Hagan filed this action seeking review of the ALJ's decision. On August 15, 2014, the court issued an order reversing the Commissioner's decision and remanding the case with directions to the ALJ to consider Hagan's mental impairments (the "Order"). Tr. 579–85. On remand, the ALJ issued a decision on March 23, 2015, once again finding Hagan not disabled under the Act. Tr. 510–23. Hagan bypassed the Appeals Council and sought judicial review of the Commissioner's decision on May 29, 2015. ECF No. 1. The magistrate judge issued an R&R on January 24, 2017, recommending that this court affirm the ALJ's decision. ECF No. 25. Hagan filed objections to the R&R on February 15, 2017, ECF No. 30, and the Commissioner responded to Hagan's objections on February 28, 2017. ECF No. 33. The matter is now ripe for the court's review.

  **B.**  **Medical History**

Because Hagan's medical history is not directly at issue here, the court dispenses with a lengthy recitation thereof and instead notes a few relevant facts. Hagan was born on April 11, 1959 and was 51 years old on the alleged onset date. Tr. 32. She has a tenth grade education and past relevant work experience working at a grocery store deli counter and as shift manager at a bingo parlor. Tr. 32–33.

  **C.**  **ALJ's Decision**

The ALJ employed the statutorily-required five-step sequential evaluation process to determine whether Hagan had been under a disability since her amended

alleged onset date of June 1, 2010 through her date last insured of September 30, 2011. Tr. 515. The ALJ first determined that Hagan had not engaged in substantial gainful activity during the relevant period. Tr. 515. At the second step, the ALJ found that Hagan suffered from the following severe impairments: degenerative disc disease, degenerative joint disease status post left knee arthroscopy, and chronic obstructive pulmonary disease. Tr. 515. At step three, the ALJ determined that Hagan's impairments did not meet or equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"). Tr. 516. Before reaching the fourth step, the ALJ determined that Hagan had the residual functional capacity ("RFC") to perform light work, as defined by 20 C.F.R. § 404.1567(b). Tr. 517. Specifically, the ALJ found that Hagan could: lift and carry up to twenty pounds occasionally and ten pounds frequently; stand, walk, and sit for six hours in an eight-hour workday; occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl; frequently balance; and never climb ladders, ramps, or scaffolds. Id. The ALJ further determined that Hagan must avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation, and that she must avoid exposure to hazards such as machinery and heights. Tr. 518. At step four, the ALJ found that Hagan was able to perform past relevant work as a bingo shift manager because this work did not require the performance of any work-related activities that were precluded by her RFC of light work. Tr. 522. Therefore, the ALJ concluded that Hagan had not been under a disability within the meaning of the Act since the alleged onset date. Id.

## II.  STANDARD OF REVIEW

This court is charged with conducting a de novo review of any portion of the magistrate judge's R&R to which specific, written objections are made. 28 U.S.C. § 636(b)(1). A party's failure to object is accepted as agreement with the conclusions of the magistrate judge. See Thomas v. Arn, 474 U.S. 140, 149-50 (1985). The recommendation of the magistrate judge carries no presumptive weight, and the responsibility to make a final determination rests with this court. Mathews v. Weber, 423 U.S. 261, 270–71 (1976).

Judicial review of the Commissioner's final decision regarding disability benefits "is limited to determining whether the findings of the [Commissioner] are supported by substantial evidence and whether the correct law was applied." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "more than a mere scintilla of evidence but may be somewhat less than a preponderance." Id. (internal citations omitted). "[I]t is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the [Commissioner] if his decision is supported by substantial evidence." Id. Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ]," not on the reviewing court. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citation omitted).

## III.  DISCUSSION

Hagan's sole objection to the R&R is that the ALJ was deficient in conducting the RFC analysis because he did not adequately comply with the directive in this

4

court's August 15, 2014 order to consider Hagan's mental impairments.[1]  ECF No. 30 at 1.  The court disagrees.

The mandate rule states that a lower court on remand must implement both the letter and the spirit of the appellate court's mandate and may not disregard the explicit directives of the appellate court.  Brown v. Astrue, 2009 WL 330086, *3 (N.D.Tex. Feb. 11, 2009).  "In Social Security proceedings, the district court's position to the Appeals Council (and indirectly, the ALJ) is analogous to that of the court of appeals' position with respect to a trial court."  Id. at n. 3 (quoting Ischay v. Barnhart, 383 F. Supp. 2d 1199, 1215 (C.D. Cal. 2005).  Friday v. Comm'r of Soc. Sec. Admin., 2009 WL 1181068, at *6 (N.D. Tex. Apr. 29, 2009).

In its August 15, 2014 order, this court determined that the ALJ's RFC analysis regarding Hagan's mental impairments was deficient.  Tr. 579–85.  The court instructed the ALJ to perform a more detailed assessment of Hagan's mental impairments to determine what, if any, limitations they placed on her ability to work.  Tr. 585.  Hagan argues the ALJ failed to "comply with this court's specific instruction to consider how [Hagan's] mental impairments (whether severe or not) affected her RFC," and that the RFC contains no limitations relating to Hagan's mental

---

[1] In her objections, Hagan makes a passing reference to her "other allegations of error" that the ALJ allegedly ignored.  ECF No. 30 at 4.  This is the extent of Hagan's argument—she does not identify any specific allegations of error that the ALJ ignored on remand.  The Fourth Circuit has held that a party must object to the finding or recommendation on that issue with "sufficient specificity so as reasonably to alert the district court of the true ground for the objection."  United States v. Midgette, 478 F.3d 616, 622 (4th Cir. 2007).  Assuming that Hagan's reference to her "other allegations of error" is intended as an objection—which, the court notes, is not entirely clear—the court finds that Hagan has failed to raise an objection "sufficiently specific" to focus the court's attention on the issues that are in dispute, and thus that she has waived the objection.

impairments. ECF 30 at 2. The Commissioner contends that the ALJ was required only to "provide an adequate explanation of the limitations," and that he has done so. ECF 33 at 3.

A review of the ALJ's decision reveals that Hagan's arguments are without merit. The ALJ's explanation of how and to what extent Hagan's mental limitations affect her RFC is appropriate. Specifically, the ALJ noted that Hagan's anxiety is treated adequately with medication and her depression causes only "mild mental difficulties associated with being in public" because she is able to carry out activities of daily living. Tr. 517. The ALJ explained how he accounted for Hagan's non-severe anxiety and depression in the RFC assessment, and considered the "combination of [Hagan's] anxiety in conjunction with her chronic obstructive pulmonary disease," concluding that these conditions were adequately controlled and not disabling. Tr. 521. The ALJ also discussed Hagan's primary care physician Dr. Patricia Campbell's ("Dr. Campbell") October 3, 2011 impairment questionnaire, which concluded that Hagan's "physical and psychological ailments" would prevent her from handling most stressful situations, and that Hagan would need to take "unscheduled breaks every 15-30 minutes for 1-2 hours at a time" leading to her missing "more than three days of work a month." Tr. 521. The ALJ chose to give the questionnaire little weight because (1) Dr. Campbell had not examined Hagan since December 8, 2010, (2) Dr. Campbell's previous treatment notes did not indicate such limitations, and (3) Erica Gunnells, a nurse practitioner in Dr. Campbell's practice, conducted a physical examination of Hagan on October 3, 2011 and reported Hagan's anxiety as stable. Tr. 521. Furthermore, the ALJ noted that neither Dr. Sabino

D'Agostino nor Dr. Seth P. Kupferman, Hagan's treating physicians, found Hagan to be as limited as Dr. Campbell.  Tr. 521.  As a result, the ALJ gave little weight to Dr. Campbell's opinion.

The ALJ discussed Hagan's testimony from her January 22, 2015 hearing that she has anxiety and depression, as well as how her physical symptoms such as the swelling in her knee and back affect her mental symptoms.  Tr. 519.  However, the ALJ ultimately finds that Hagan's statements are not fully credible.  Tr. 519.  For support, the ALJ cites evidence from the record including Dr. Campbell's September 22, 2010 mental health medical source statement which stated that Hagan did not have any current mental health diagnosis and that Hagan did not exhibit any work-related limitations in function due to a mental condition, as she showed "intact thought process, appropriate thought content, normal mood and affect, and good memory, attention, and concentration."[2]  Tr. 519.

---

[2] In his discussion of Hagan's mental health, the ALJ notes that Hagan has not sought any mental health care treatment outside of drug therapy from Dr. Campbell. Tr. 519.  Frequent medical visits "generally lend support to an individual's allegations of intense and persistent symptoms."  S.S.R. 96–7p, 1996 WL 374186, at *7 (July 2, 1996).  In contrast, however:

> [an] individual's statements may be less credible if . . . records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure.  However, the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment.

Id.  Here, the ALJ's discussion lacks any indication whether he considered the possible reasons that Hagan had not sought any mental health care treatment, namely that mental health care treatment is frequently costly.  Hagan testified during the

The ALJ analyzed Hagan's claims, and adequately explained his consideration of the evidence and how it factored into his formulation of her RFC. For example, the ALJ noted that Hagan provided no evidence of disabling limitations due to depression or anxiety. Tr. 515–16. The ALJ also cited treatment notes in the record that Hagan's anxiety and chronic obstructive pulmonary disease were adequately treated with medication. Tr. 517. The ALJ also addressed the combined effect of Hagan's degenerative disc disease and depression on her ability to work, stating that Hagan was able to carry out activities of daily living, including driving a car "with only mild mental difficulties associated with being in public." Tr. 517. The ALJ also addressed the combined effects of Hagan's chronic obstructive pulmonary disease and anxiety, finding that the treatment notes documented that her condition was adequately treated with medication. Tr. 517.

While Hagan may disagree with the ALJ's assessment, it is not the province of this court to re-weigh conflicting evidence, to make credibility determinations, or to substitute its judgment for that of the Commissioner. Craig, 76 F.3d at 589. The ALJ fully explained his findings in formulating Hagan's RFC and provided specific reasons for his assessment. Tr. 517–522. In doing so, the ALJ complied with this court's order to consider the impact of Hagan's non-severe mental impairments on

---

January 22, 2015 hearing that her health insurance does not cover mental health treatment. Tr. 519. In conjunction with Hagan's testimony that she pays Dr. Campbell a $20 copay and "does her best" to pay the rest, and that she gets her prescriptions from the "$4 list at Walmart," it is reasonable to conclude that Hagan did not seek specialized mental health care treatment because it was cost-prohibitive. Tr. 519. In and of itself, the fact that Hagan did not seek mental treatment outside of the drug therapy that Dr. Campbell provided does not establish that she did not suffer from severe mental health impairments.

her RFC. The court is satisfied that the ALJ's decision was supported by substantial evidence.

## IV. CONCLUSION

Based on the foregoing, the court **ADOPTS** the magistrate judge's R&R, and **AFFIRMS** the Commissioner's decision.

**AND IT IS SO ORDERED**.

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**March 31, 2017**
**Charleston, South Carolina**